May I please the court? I don't have. Wait, I don't have both counsel on screen. We have judge Loken. Please pin Lisa Williams in order to get Miss Dupuy on your screen. Oops, it's not working. All right, there we go. Says you're starting a new conversation. I get rid of that. All right, the obvious way. All right. My screen is in order now. Thank you, Your Honor. Mr. Ross, you may proceed. Thank you, Your Honor. Our briefing addresses both the outcome of the suppression motion in this case, as well as the career offender determination. However, we recognize that the career offender issue is foreclosed by circuit precedent, and we've raised it to preserve it because of a circuit split. So I will confine my remarks here to the suppression issue. The court should reverse the district court's denial of the motion to suppress. In this case, the investigating officer seized Mr. Warren by ordering him to remain seated in a vehicle without probable cause, reasonable suspicion or other legitimate justification. And as a result, the fruits of this seizure, including the controlled substances found in the front passenger seat and on Mr. Warren's person must be suppressed. The basis cited by the district court and the government for seizure of Mr. Warren here were officer safety concerns. This is a case where the officer and his partner have been called out to investigate a noise complaint. The car in which Mr. Warren was seated was parked around the back of the house, and Officer Haas went to the back of the house while his fellow officer was knocking on the front door to investigate the noise complaint. When Officer Haas approached, the person in the driver's seat quickly informed him that he didn't have a valid license and had driven there. There was nothing that Officer Haas observed at this point or later that tied the individuals in the car to the noise complaint. At this point, Officer Haas was authorized to and did conduct an investigation of the license violation that had occurred previously and asked the person in the driver's seat to get out of the car. However, as we noted at this point, there was no probable cause or reasonable suspicion as to the other occupants of the car, including Mr. Warren. And shortly afterwards, when the seizure occurred, the seizure was the officer's direction to Mr. Warren when Mr. Warren attempted to stand up and get out of the car to remain seated. And the question, of course, as to whether or not this was a seizure was whether or not a reasonable person in that position would have understood himself to have had his freedom of motion restrained. And it's our position that Mr. Warren reasonably would have understood his freedom of motion to be restrained under these circumstances. It's illustrative that he clearly didn't feel his freedom of motion to be restrained. And also that Officer Haas testified at the suppression hearing that had Mr. Warren continued to get up, he would have been stopped or he would have been told to stop. Of course, the question is what a reasonable person would have took this command to be. And the district court determined that it was not a command or on the order of request because it was phrased politely. But as the government noted and attending to the Garcia factors, the court needs to look at all the circumstances here. And all of the circumstances were, of course, that Mr. Warren was seated in the car. And when he attempted to get up in response to that attempt, he was told to remain seated. And when he attempted to get up in response to that attempt, he was told to remain seated. He was addressed with Sir told still a direction from an officer, which he then obeyed. And the emphasis of the direction was only enhanced when other officers shortly afterwards showed up and took positions outside the car. In fact, the noise complaint was in the process of being resolved by the front door. The front door didn't want to let him in, and at that point, his normal procedure is simply to go back into service to cease investigating the complaint, because the noise complaint is a minor offense. And that's what we're going to look at in this case. Also, in this case, and this distinguishes this from any of the other cases that was carrying this to officer house was not alone. It's not distinguishable, for example, from the United States versus Sanders, where the officer was alone and in a high crime area. Now, there was testimony that both officers had heard secondhand through professional conversations that individuals in the house may have had there was association with narcotics. But that doesn't rise to the same level of high crime area in the sense that the officers here didn't appear to feel themselves and reasonably didn't feel themselves better. In fact, they all testified that the tone of the entire encounter was cordial, and nobody made any aggressive. Are you asking us to review that de novo? Your Honor, the facts are not disputed in this case. We're only asking the court. Neither is it disputed that the call was a noise complaint, and the officers knew that this was a house where occupants were involved in drugs. So for you to just say, well, there was no officer safety here because there were a lot of them, et cetera, et cetera. That sounds to me like messing with fact findings. No, Your Honor. And we would concede that, of course, that there were individuals in the house who had warrants and that there were some form of officer safety concerns present, as there always are when officers interact with members of the public. It's simply our position that the minimal nature of the officer safety concerns as balanced against the restraint on individual liberty doesn't warrant restraint. And what case supports this minimization? If we can minimize the officer safety now, we can create a balancing and I win. Your Honor, the case where the two are balanced against each other is Maryland v. Wilson, in which the Supreme Court said that during a traffic stop, individuals can be ordered out of a car and that the imposition on individual liberty is minimal compared to the officer safety concerns involved. Unless that's what we have here. Your Honor, I'd argue that this— All Mr. Warren was told was to please stay in the car. Presumably, when he tried to leave after the driver had been ordered out of the car for having admitted a traffic offense. I don't see where you're—even if there's some balancing in terms of determining reasonableness. But if there's any legitimate officer safety concern whatsoever, the interference with personal rights is truly minimal. Your Honor, we'd note that here the traffic investigation did proceed for some time, almost an hour. So it was not on the order of a very brief traffic stop. And there are also factors that distinguish this from the ordinary traffic stop. We're just talking about the stay-in-the-car moment, right? And the continuing detention thereafter. Well, okay now, but we've got a lot more justification once the contraband is found. We would agree, Your Honor, and that occurs some seven to eight minutes later. If there are no further questions, I'll reserve the balance of my time for rebuttal.  Ms. Dupuis, I'm not sure I can pronounce that correctly. Thank you, Your Honor. May it please the court, my name is Elizabeth Dupuis. I am an Assistant United States Attorney for the Northern District of Iowa. We are respectfully requesting that this court uphold the district court's order denying defendant's motion to suppress and affirm our sentence. The issues in this case are, first, whether the officer violated the Fourth Amendment when he asked the defendant passenger, Sir, can you just stay in there for me, please? Thank you, I appreciate it, while he investigated the driver for driving without a valid driver's license. Based on the situation, the officer in our case did not violate the Fourth Amendment by asking the defendant to remain seated and was justified in his temporary control of the scene. Safety concerns at the time entitled our officer to investigate the driver without allowing an unidentified and potentially dangerous passenger to walk away. The second issue is whether the request was even a seizure at all. Our answer to that question is that no seizure occurred until the defendant was ordered out of the vehicle and handcuffed, which happened after one officer had smelled marijuana and another had noticed it in a baggie inside the vehicle. The reason why no seizure occurred when the officer asked the defendant to remain seated is due to a consideration of the totality of the circumstances in our case, which would have led a reasonable person to believe he was free to leave. The final issue is whether the baggies of drugs that were found are the fruit of any illegal seizure. We offer they were not. The defendant here had no reasonable expectation of privacy in the car. There's no nexus between the bags of drugs found in the car and the defendant being asked to stay seated for safety reasons, which is the alleged seizure. Likewise, the drugs in the car were located after they were independently smelled and seen by officers on the scene. For these reasons, we're respectfully requesting that this court affirm the district court's order and sentence. I'd like to talk for just a minute about... So now you're arguing contrary to the testimony of the officer at the hearing, right? I'm sorry, with respect to what, Your Honor? Well, with respect to whether he would have let him go. Well... I thought the officer testified, well, yeah, if he asked... The officer at the hearing testified... He did, Your Honor, he did say that at the hearing, that he would have asked for him to remain seated. And Judge Williams in the district court order mentioned that it didn't matter whether or not the officer... Wait, counsel, wait, counsel. That absolutely makes sense because if Jenkins has admitted he's not a valid driver, a reasonable officer would ask the passenger to stay because the passenger may need to drive the car away to avoid impounding. Yes, a reasonable officer would, yes. So the passenger, I mean, I don't care that the officers were on foot, once Jenkins made his admission, it's not a traffic stop, it's a traffic detention, if you will. And so the passenger cases like Wilson seems to me apply. Yes, Your Honor, our position would be that if in fact this was a seizure and the request for the passenger to remain seated was a seizure, that it was justified under Sanders and Maryland v. Wilson. We find that our case is analogous to Sanders. Sanders was a case where the court stated that the passenger liberty intrusion was outweighed by officer safety concerns. In the Sanders case, obviously the car was stopped for a traffic violation. Here we have our driver being investigated for a driving offense. In Sanders, the evening was described as dark. The officer was outnumbered by passengers. In our case, our officer was alone at the outset. He was by himself at the time that the passenger asked to exit the vehicle. He describes the evening as quite dark outside and pitch black. The Sanders passenger, who did at that point nothing wrong, asked to get out of the car, as did our defendant. The Sanders passenger was ordered to stay in the car approximately three times as our defendant was asked to remain seated at that time without reasonable suspicion. The Sanders officer spotted a pistol grip in the passenger's pocket. Our second officer on scene smelled marijuana right after the defendant was asked to stay seated. That was followed by a third officer seeing a baggie of marijuana in the car. The Sanders court, as defense counsel noted, was a high-crime area. In our case, we heard testimony that there were individuals with warrants at the residence and the officer was familiar with people being there who used narcotics. The Sanders court found that the amount of time the passenger was detained was de minimis. In our case, officer asked the defendant to remain seated at 8.51, 21 p.m. At approximately 8.52, 19, the second officer comes on scene and testified that he smells marijuana upon his approach. You can hear him introduce himself on government's Exhibit 1, greeting the people as he walked up to the lawn. The Sanders court found that the amount of time the passenger was detained was de minimis. Approximately 8.52, 19. That's about one minute. So we would argue that this intrusion on the passenger's liberty, in this case, is de minimis as it was in Sanders. Our position is that officers' safety concerns, as noted in the suppression hearing,  for officers' safety, everybody would remain in the vehicle until our investigation was done. In Sanders, for safety, the officer didn't want somebody out of his sight. Let me ask you this, counsel. Sure. Is it your position that if Jenkins had not admitted that he didn't have a license and had driven the car there, could Officer Haas have detained either Warren or Jenkins? It would be unlikely that Officer Haas would have reasonable suspicion to detain the individuals in the vehicle if Cedric Jenkins hadn't volunteered that he had driven to the residence and didn't have a valid driver's license. You can't divorce the driving violation. Officer safety doesn't really come into play until after the initial detention, if that's what it was. Of course, the district court concluded it was a consensual affair until the marijuana was seen. Yes, Your Honor, that's correct. It's not a straightforward situation, but I don't see very many Fourth Amendment suppression cases that are straightforward. Yes, Your Honor. And it's difficult because so many officers are at the scene at one time who testified in the hearing with different observations. In fact, we don't have a body camera recording in this case. We only have an audio. And so you have to mute one officer to hear what another officer is doing. And so it's a complicated, evolving situation. Another reason why we believe officer safety concerns in this case outweighed the de minimis intrusion on the passenger liberty entrance. We believe that our case is analogous to Maryland versus Wilson as well as U.S. second. And we believe our case is I'm sorry, Sanders. We believe our case is distinguishable from U.S. second, which is the case that a defendant cited in his reply brief. That was a case involving a it's an Iowa case, U.S. v. Stephan. That was a car wash day where the court ultimately held that a passenger. Of course, these two individuals were outside of their car, washing their car in a lit car wash bay. And the court said that after seven minutes, after everyone had already figured out whose identity these people were, criminal history checks, warrants that it would not be reasonable to hold the passenger. Continuing past that seven minute mark after all of their information had already been checked. The court in Stephan said that that type of a case lacked the danger in a typical traffic stop. But we would distinguish our case from Stephan's. And unless there are any questions, any further questions, Your Honor, on behalf of the government, we are respectfully requesting that you would affirm the district court's order. Thank you, counsel. Mr. Cross have some time. Thank you, Your Honor. I'd like to pick up on something that the question from the court, which is was to the effect that officer safety as a rationale for detention doesn't come into play until a traffic violation. And of course, this is what we know from the line of passenger stop cases, including Brendan and Wilson. But our argument here is that this situation is distinguishable from the traffic stop cases and is more similar to individuals being found out of doors or seated on a bench or something to that effect. The rationale by which all passengers are seized under Brendan is that when a traffic stop is made, the individuals in the car are already detained on their way to wherever they're going. So their liberty has already been imposed on. And in addition to that, that the officer's investigation is not clearly targeted at the driver until further events occur here. The officer was, in fact, was in effect investigating a previous violation of the driving laws or the license laws by the driver. But he did not stop the car on the path to its destination. And his investigation was very clearly directed at Jenkins, who had been driving. But as briefing noted, the record is silent as to whether the car's engine was currently running. So for all of those reasons, we would ask the court to reverse the district court's denial of the motion to suppress. Very good. Thank you, counsel. The case has been fairly brief, well argued. We'll take it under advisement.